## STATE v. GALE FREEMAN MORGAN.

(Filed 12 October, 1966.)

**1. Criminal Law § 101—**

The trial court is under duty to submit the question of guilt to the jury if there is material evidence of each essential element of the offense charged and that defendant was the perpetrator of the offense; this rule applies whether the evidence is circumstantial, direct, or a combination of both, it being for the jury and not the court in passing upon circumstantial evidence to determine if it excludes every reasonable hypothesis of innocence.

**2. Larceny § 7; Burglary and Unlawful Breakings § 4— Circumstantial evidence of defendant's guilt of breaking and entering and larceny held sufficient.**

The State's evidence tended to show that a store had been broken into and a clock, flashlight and certain other merchandise taken therefrom. The circumstantial evidence tended to show that defendant had possession of his brother's automobile at the time in question, that the automobile was found with its front wheels in the ditch at the back of the store, that defendant's shoes fitted the tracks plainly visible in the heavy frost at the scene, that the tracks were peculiar in that the right toe turned up, that a crowbar, tire tool, a big screwdriver, a clock and some razor blades were found under a piece of tin roofing at the back of the store, that the crowbar fitted the peculiar indentations where the store door had been broken, that a piece of metal found in another door of the store which had been "jimmied" open fitted the broken place on the screwdriver, together with testimony of witnesses tending to show that defendant had been transported from a place near the store to where defendant had been picked up by officers, that a flashlight of like make with the one from the store was found in defendant's possession, etc. *Held:* The evidence was sufficient to overrule defendant's motion for nonsuit on charges of breaking and entering and larceny.

**3. Burglary and Unlawful Breakings § 9—**

In a prosecution under G.S. 14-55, the State has the burden of showing defendant's possession without lawful excuse of the items enumerated in the statute or items coming within the generic term "implements of housebreaking," and while gloves, flashlight, socks, a tire tool and small screwdriver are not implements of housebreaking within the intent of the statute, a crowbar and big screwdriver are such implements.

**4. Same—**

The State's evidence tending to show that defendant had in his possession a big screwdriver and crowbar and that defendant had actually used the big screwdriver and crowbar to break and enter a store building, is sufficient to be submitted to the jury on the question of defendant's guilt of possession of implements of housebreaking without lawful excuse.

**5. Criminal Law § 121—**

A motion in arrest of judgment must be based on matters appearing on the face of the record proper or on matters which should but do not so appear, and cannot be based on the evidence, which is not a part of the record proper.

**6. Burglary and Unlawful Breakings § 9—**

An indictment under G.S. 14-55 is not fatally defective because of its failure to enumerate any of the articles specified in the statute as implements of housebreaking when it does specify implements coming within the generic term of "implements of housebreaking."

**7. Larceny § 3—**

An indictment charging defendant with larceny of goods of a value of $18.00, and failing to charge that the larceny was from a building by breaking and entering or any other means of such nature as to make the offense a felony, charges only a misdemeanor.

**8. Criminal Law § 164—**

Where defendant is tried under an indictment charging several offenses and the cases are consolidated for the purpose of judgment and but one sentence is pronounced upon verdict of guilty of each offense, any error relating solely to the misdemeanor charged cannot entitle defendant to a new trial when the sentence is within the maximum provided for the felony offenses in regard to which no error was committed in the trial.

APPEAL by defendant from *Bundy, J.,* August 1966 Criminal Session of NASH.

Criminal prosecution upon two indictments which were consolidated for trial. The first indictment charges defendant on 20 February 1965 with unlawfully and feloniously having in his posession, without lawful excuse, implements of housebreaking, to wit, one crowbar, three screwdrivers, one tire tool, gloves, flashlights, and socks. The second indictment, in the first count, charges that the defendant on 20 February 1965, with intent to commit larceny, did feloniously break and enter a storehouse and shop occupied by W. E. Griffin, where merchandise and money of W. E. Griffin were stored; and the second count charges defendant on the same date with the larceny of one Westclock clock, one carton razor blades, one flashlight, and two batteries, all of the value of $18, of the goods, chattels, and moneys of W. E. Griffin.

The defendant, who is an indigent, was represented by court-appointed counsel, Frederick E. Turnage.

Plea: Not guilty. Verdict: Guilty as charged in both indictments.

The two cases were consolidated for the purpose of judgment, and one judgment of imprisonment was imposed. So far as the record before us discloses, defendant did not appeal in open court. On 30 August 1965 defendant wrote a letter from the State prison in Raleigh to the clerk of the Superior Court of Nash County stating that he was in the process of filing notice of appeal to the Supreme Court, and that he was sending along with a copy of his letter a letter to his attorney, Mr. Turnage, asking that he execute the

official notice of appeal. On 3 September 1965 Turnage wrote a letter to the solicitor of the district giving notice of defendant's appeal to the Supreme Court. The solicitor accepted service of the notice of appeal on 6 September 1965. On 1 December 1965 defendant's counsel, Frederick E. Turnage, for good cause shown, was permitted by order of Judge Hubert E. May, presiding over the Superior Court of Nash County, to withdraw as counsel for defendant, and in the same order Judge May appointed R. G. Shannonhouse as counsel for defendant to perfect his appeal and to appear for him in the Supreme Court. On 2 May 1966 R. G. Shannonhouse filed in the Supreme Court a petition for a writ of *certiorari* to bring defendant's case up for review alleging in substance that the delay in perfecting the appeal was due to the fact that he was not appointed as counsel for defendant until 1 December 1965, and his inability to secure a transcript of the evidence and the charge in the case due to prior commitments by the court reporter. The Attorney General filed an answer to the petition for a writ of *certiorari* requesting this Court to grant a writ of *certiorari* and allow the record in this case to come up for review. This Court in conference on 10 May 1966 allowed the petition for writ of *certiorari* and ordered that the appeal be heard at the Fall Term 1966 in its regular order.

*Attorney General T. W. Bruton, Deputy Attorney General Harry W. McGalliard, and Assistant Attorney General Millard R. Rich, Jr., for the State.*

*R. G. Shannonhouse for defendant appellant.*

PARKER, C.J. The State offered evidence; defendant offered no evidence. Defendant assigns as error the denial of his motion for judgment of compulsory nonsuit as to both cases made at the close of the State's evidence.

The State's evidence, considered in the light most favorable to it, shows the following facts: In February 1965 W. E. Griffin operated and owned a general merchandise business in a building belonging to Mrs. N. E. Bass in Red Oak, Nash County. About 5:30 a.m. on 20 February 1965 Griffin went to his store, and found that its two front doors had been broken open since he left there the night before. He found in his store three boxes, two of which were "about 2-bushel size," filled with his merchandise. He found some Dutch Master cigars on the floor where one would stand to operate his cash register, which were not his, and had not been there the night before.

Deputy Sheriff Fred Wood, in response to a telephone call from

Griffin, arrived at Griffin's store shortly after 5:30 a.m. The store building had two front doors, a side door, and a 12-foot slide door at the rear. The corner front door had been "jimmied" with a heavy crowbar or screwdriver, and was demolished. The other front door had been "jimmied," and was knocked completely open. The big back door was open. The merchandise in the store had been "tangled right bad." In the front of the store Wood saw three cardboard boxes filled with wearing apparel, underwear, socks, shirts, caps, and dry goods. About 55 steps from the back of the store, past a gin house, Wood saw a 1953 Ford automobile with its front in a ditch beside the driveway. One set of automobile tracks was visible from the back of Griffin's store to where the front part of the automobile was in the ditch. There was a heavy frost that morning, and the automobile tracks were as visible as if there had been a snow. The automobile was registered in the name of defendant's brother. Later in the day Wood heard defendant tell his brother in the sheriff's office that he ran the automobile in the ditch and not to pay the bill for towing the automobile in, as it was not bothering anybody.

Elijah Hines carried a white man from Hilliard's store, which is about three-quarters of a mile from Griffin's store, to Rocky Mount between 7 and 8 a.m. on 20 February 1965. This man said he had run his automobile in a ditch down the road "a little ways." On the way to Rocky Mount this man gave Hines a drink of whisky and some Dutch Master cigars. He put this man off at the corner of Church Street and Falls Road.

Between 8:30 and 9:00 a.m. on 20 February 1965 Ernest Lee Jones, a taxicab driver, picked up defendant at the corner of Church and Falls Road in Rocky Mount. He said he wanted to go to the bus station, and then said he wanted to go to Wilson. Defendant told him he had run his automobile in a ditch, and had hurt his knee. In transit to Wilson he was stopped by police officers from Rocky Mount. The officers searched defendant, and found a flashlight on him. Defendant was carried to the sheriff's office in Nashville.

A fingerprint was lifted from the flashlight taken from defendant's person, and in the opinion of Stephen R. Jones of the State Bureau of Investigation, who was held upon competent evidence by the court to be an expert in fingerprint classification and identification, it was the fingerprint of W. E. Griffin. Griffin had in his store flashlights exactly like the flashlight taken from defendant's person. One of these flashlights was missing on the morning of 20 February 1965. Defendant said he had never been in Griffin's store.

Shoe tracks at the front door of Griffin's store and at the back door of the store and where the 1953 Ford automobile was in the

ditch in front of the cotton gin, and shoe tracks from the 1953 Ford automobile leading to the piece of tin roofing on the ground under which a crowbar, a tire tool, a big screwdriver, a clock, and some razor blades were found, were identical. The tracks were easy to follow because the track of the left shoe showed all the way, and the right track did not show a shoe toe, but only the heel and the ball of the foot. Defendant's shoes were placed in the shoe tracks at the front of the store and around the automobile that had run into the ditch, and they were identical. The toe of defendant's right shoe turned up. Defendant is clubfooted. Under the piece of tin roofing were found a crowbar, a tire tool, a big screwdriver, a clock, and some razor blades. The crowbar had some gaps in it which showed up very plain in the wood in the facing of a front door of Griffin's store where it was prized open. The screwdriver had several places on it identical with places at the left front door of the store. A little piece of the screwdriver was broken off, and a little piece of iron was found at the front door which fitted perfectly the place on the screwdriver where a piece was broken off. The tire tool had paint on it, and paint of a similar color was on a door of the store.

Griffin identified the clock found under the tin roofing as his property. He had had it in his store four or five years. The razor blades found under the tin roofing he could not identify as his, though he had similar razor blades in his store the night it was broken into.

The car in the ditch behind the store was searched and in it were found a putty knife, two screwdrivers, two flashlights, a pair of gloves, a map, an extra pair of license plates, clothes, socks, and other things.

Sheriff Womble in his office warned defendant of his constitutional rights. Defendant replied, "Sheriff, I know my rights." Womble testified that defendant told him "he was going to plead not guilty and sit back and wait for the Court to make a mistake and cash in on it." Deputy Sheriff Fred L. Wood talked to defendant in the sheriff's office. Wood testified that defendant told him that "all he wanted was a good lawyer, twelve good men, and a judge," and he said, "And I'll beat the hell out of you." He further said to Wood, "You don't expect me to tell you something and pick up four or five more years for it, do you?" Wood replied, "I sure don't." Defendant then said, "I'd be a damn fool to tell you something and pick up four or five years for it."

The rule in respect to the sufficiency of circumstantial evidence to carry the case to the jury is lucidly stated in an opinion by Higgins, J., in *S. v. Stephens*, 244 N.C. 380, 93 S.E. 2d 431, as follows:

"We are advertent to the intimation in some of the decisions involving circumstantial evidence that to withstand a motion for nonsuit the circumstances must be inconsistent with innocence and must exclude every reasonable hypothesis except that of guilt. We think the correct rule is given in *S. v. Simmons*, 240 N.C. 780, 83 S.E. 2d 904, quoting from *S. v. Johnson*, 199 N.C. 429, 154 S.E. 730: 'If there be any evidence tending to prove the fact in issue or which reasonably conduces to its conclusion as a fairly logical and legitimate deduction, and not merely such as raises a suspicion or conjecture in regard to it, the case should be submitted to the jury.' The above is another way of saying there must be substantial evidence of all material elements of the offense to withstand the motion to dismiss. It is immaterial whether the substantial evidence is circumstantial or direct, or both. To hold that the court must grant a motion to dismiss unless, in the opinion of the court, the evidence excludes every reasonable hypothesis of innocence would in effect constitute the presiding judge the trier of the facts. Substantial evidence of guilt is required before the court can send the case to the jury. Proof of guilt beyond a reasonable doubt is required before the jury can convict."

The above has been quoted with approval in whole or in part in many of our decisions. *S. v. Roux*, 266 N.C. 555, 563, 146 S.E. 2d 654, 660.

Considering the State's evidence in the light most favorable to it, and giving it the benefit of every reasonable and legitimate inference to be drawn therefrom, it is plain that the total combination of facts shows substantial evidence of all essential elements of the offenses charged in the first count in the second indictment and in the second count in the second indictment as to the larceny of the clock and one flashlight, and is amply sufficient to carry the case charged in the second indictment on both counts to the jury. The trial judge properly overruled defendant's motion for judgment of compulsory nonsuit on the case alleged in the second indictment.

The first indictment charges defendant with "unlawfully and feloniously having in his possession, without lawful excuse, implements of housebreaking, to wit, one crowbar, three screwdrivers, one tire tool, gloves, flashlights, and socks." G.S. 14-55, under which the indictment is drawn, provides in relevant part: "If any person . . .; shall be found having in his possession, without lawful excuse, any pick-lock, key, bit or other implement of housebreaking; . . . such person shall be guilty of a felony. . . ." G.S. 14-55 defines three separate offenses, and the part of the statute we have

quoted is a separate offense. *S. v. Garrett*, 263 N.C. 773, 140 S.E. 2d 315.

There is no evidence that on this occasion defendant was in possession of any pick-lock, key, or bit. If the tools enumerated in the indictment are embraced within the general term "other implement of housebreaking," their possession, if they were in defendant's possession, without lawful excuse, is prohibited by G.S. 14-55.

In *S. v. Boyd*, 223 N.C. 79, 25 S.E. 2d 456, there is a most interesting account of the historical background leading up to the enactment by the General Assembly of the statute now codified as G.S. 14-55.

Obviously, gloves, flashlights, and socks are not breaking tools. Burglars may commonly carry them on their burglarious expeditions to furnish light and to avoid leaving fingerprints while they are breaking into buildings, but they do not use them for breaking. A crowbar is clearly a breaking tool. *S. v. Hefflin*, 338 Mo. 236, 89 S.W. 2d 938, 103 A.L.R. 1301, 1308-09. See *S. v. Boyd, supra*. A crowbar is also an ordinary tool used by carpenters and mechanics. *S. v. McCall*, 245 N.C. 146, 95 S.E. 2d 564. We also take judicial notice of the fact that screwdrivers are ordinary tools used by many people for lawful purposes. In *S. v. Garrett, supra*, we expressed some doubt as to whether a tire tool under the *ejusdem generis* rule is of the same classification as a pick-lock, key, or bit, and hence condemned by G.S. 14-55. In that opinion it is said: "A tire tool is a part of the repair kit which the manufacturer delivers with each motor vehicle designed to run on pneumatic tires. Not only is there lawful excuse for its possession, but there is little or no excuse for a motorist to be on the road without one."

In a prosecution under the provisions of G.S. 14-55 quoted above, the burden is on the State to show two things: (1) That the person charged was found having in his possession an implement or implements of housebreaking enumerated in, or which come within the meaning of the statute, and (2) that such possession was without lawful excuse. *S. v. Boyd, supra*.

The jury could find from the State's evidence that on 20 February 1965 the two front doors of Griffin's store were feloniously broken open and entered by defendant, with intent to commit larceny of the merchandise therein, by means of a crowbar and a big screwdriver in his possession at the time; that several hours later defendant, when apprehended by police in Rocky Mount or near it, had on his person a flashlight which he stole and carried from the store bearing the fingerprints of Griffin; and that he had in the store merchandise from Griffin's store which he had packed in three boxes,

which he was unable to carry away due to the fact that defendant had driven his brother's automobile into a ditch and could not get it out. The jury could further find that when defendant realized he could not get his brother's automobile out of the ditch he hid the crowbar, a tire tool, a big screwdriver, a clock, and some razor blades under the piece of tin roofing on the ground in the hope that they would not be found, but which were found by Sheriff Womble in tracing defendant's shoe tracks from the automobile in the ditch to the piece of tin roofing. Bobbitt, J., said for the Court in *S. v. Allison*, 265 N.C. 512, 144 S.E. 2d 578: "If and when it is established that a store has been broken into and entered and that merchandise has been stolen therefrom, the recent possession of such stolen merchandise raises presumptions of fact that the possessor is guilty of the larceny *and* of the breaking and entering." It is our opinion that the two small screwdrivers, the tire tool, the gloves, the flashlights, and the socks in defendant's possession at the time Griffin's store was broken into and entered by defendant were not other implements of housebreaking within the intent and meaning of G.S. 14-55. However, it is our opinion, and we so hold, that the State's evidence does show a total combination of facts and circumstances from which a jury could infer that at the time and place in question defendant possessed the crowbar and the big screwdriver, singly and in combination, as implements for housebreaking, with intent to use said crowbar and big screwdriver for the purpose of feloniously breaking into and entering Griffin's store with intent to commit larceny of the merchandise therein; and did *actually* use the crowbar and the big screwdriver feloniously to break into and enter the front doors of Griffin's store, and did actually take, steal and carry away from said store one clock and one flashlight, which flashlight was taken from defendant's person a few hours after the store was broken into and entered and on which appeared the fingerprint of Griffin; and that he was unable to carry away Griffin's merchandise which he had packed in three boxes because the automobile he was driving had been driven into a ditch and he could not get it out; and that under such circumstances the possession of the crowbar and the big screwdriver was without lawful excuse, and said crowbar and big screwdriver were other implements of housebreaking within the intent and meaning of G.S. 14-55. See *S. v. McCall, supra*, p. 151 in our Reports, and p. 568 in the Southeastern Reporter, *supra; S. v. Boyd, supra*, p. 85 in our Reports, and p. 459 in the Southeastern Reporter, *supra; S. v. Hefflin, supra*; Anno.: 103 A.L.R. 1316-25; 2 Wharton's Criminal Law and Procedure by Anderson, 1957, Burglary, § 437. The court properly overruled de-

fendant's motion for a judgment of compulsory nonsuit on the case set forth in the first indictment.

Defendant assigns as error the denial of his motion in arrest of judgment "as to each count." In his brief he contends the first indictment only is fatally defective; he makes no contention that the second indictment is defective. His contention in substance is the first indictment does not charge the defendant with the possession of any of the articles specified in the relevant part of G.S. 14-55, under which this indictment is drawn, and that the articles specified in the first indictment are not other implements of housebreaking within the intent and meaning of G.S. 14-55.

In *S. v. Gaston,* 236 N.C. 499, 73 S.E. 2d 311, Ervin, J., said for the Court: "A motion in arrest of judgment can be based only on matters which appear on the face of the record proper, or on matters which should, but do not, appear on the face of the record proper. . . . The evidence in a case is no part of the record proper. . . . In consequence, defects which appear only by the aid of evidence cannot be the subject of a motion in arrest of judgment."

We have held above that the crowbar and the big screwdriver specified in the indictment under the particular circumstances of this case are implements of housebreaking within the intent and meaning of the relevant part of G.S. 14-55 quoted above. Therefore, this assignment of error is overruled.

We have carefully considered defendant's assignments of error to the charge. The second count in the second indictment charges the larceny of property of the value of $18, and does not charge that the larceny was from a building by breaking and entering, or by any other means of such nature as to make the larceny a felony. Consequently, the larceny charged in the second count in the indictment is a misdemeanor. *S. v. Fowler,* 266 N.C. 667, 147 S.E. 2d 36. No separate sentence based on defendant's conviction of larceny as charged was pronounced. Even if we concede that there was error in the charge on the doctrine of recent possession of stolen property as the trial court applied it to the larceny count in the second indictment, the error relating solely to the larceny count is considered immaterial, because the two cases were consolidated for the purpose of judgment, and the court sentenced defendant to confinement in the State's prison for a term of seven years. The conviction of defendant on the first indictment charging him with the possession of implements of housebreaking or the conviction on the first count in the second indictment charging defendant with a felonious breaking into and entering a store with intent to commit larceny supports the judgment. *S. v. Smith,* 266 N.C. 747, 147 S.E. 2d 165; *S. v. Hoover,*

252 N.C. 133, 113 S.E. 2d 281; *S. v. Smith*, 226 N.C. 738, 40 S.E. 2d 363. All defendant's assignments of error are overruled.

No error.